# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DR. GLEN HURLSTON | § | |
| | § | |
| v. | § | CASE NO. 4:13-CV-757 |
| | § | (Judge Mazzant) |
| CITY OF PRINCETON, TEXAS, ET AL. | § | |

## MEMORANDUM ADOPTING REPORT AND
## RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report and recommendation of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On December 30, 2015, the report and recommendation of the Magistrate Judge was entered (Dkt. #129) containing proposed findings of fact and recommendations that Defendants' Motion for Summary Judgment (Dkt. #95) be granted, and Plaintiff's claims against Defendants Jeffery Barnett and Robert Michnick be dismissed. Having received the report and recommendation of the Magistrate Judge (Dkt. #129), having considered Plaintiff's timely filed objections (Dkt. #133), Defendants' Response to such objections (Dkt. #134), and having conducted a de novo review, the Court is of the opinion that the finding and conclusion of the Magistrate Judge that Defendants' Motion for Summary Judgment be granted is correct and hereby adopts the Magistrate Judge's report and recommendation (Dkt. #129) as the findings and conclusions of the Court.

## BACKGROUND

The facts in this case originate from Plaintiff's interactions, beginning on January 1, 2012, with the Princeton Police Department (*see generally* #Dkt. 59). Plaintiff, by and through his Complaint, contends that Defendants Mr. Barnett and Mr. Michnick violated his First Amendment right to free speech, his Fourth Amendment right to life and liberty, his Fifth

Amendment right to liberty, and his Fourteenth Amendment right to due process and equal protection under the law (Dkt. #59 at 1, 8). The underlying facts are set out in further detail by the Magistrate Judge, and need not be repeated in their entirety (*see* Dkt. #129). Accordingly, the Court sets forth herein only those facts pertinent to Plaintiff's objections (and which were included in the Parties pleadings prior to the Magistrate Judge's report and recommendation).[1]

Mr. Barnett was hired as the Chief of Police for Princeton in May 2005 (Dkt. #95 at 11, Ex. 1 at 20:10-14, 27:10-12). On September 22, 2005, Mr. Michnick was hired as a Reserve Patrol Officer for Princeton. *Id*. at 14, Ex. 3 at 26:16-27:20. In May 2006, Mr. Michnick was hired as a full-time Patrol Officer, and was later promoted by Mr. Barnett (then Princeton's Police Chief) to Corporal, and then Sergeant – Operations. *Id*. at 14, Ex. 3 at 28:9-13]. Also in May 2006, Mr. Barnett met Suzanne Hurlston ("Mrs. Hurlston") (who was not yet married to Plaintiff) when she came to the Princeton Police Department to report the theft of her iPod. *Id.* at 11, Ex. 1 at 49:11-23; Ex. 2 at 18:22-24, 31:9-15, 32:6-14, 79:13-16. Mr. Barnett and Mrs. Hurlston subsequently began a romantic relationship that, while not continuous, lasted until approximately 2010. *Id.* at 12, Ex. 1 at 56:21-57:17, 58:9-13, Ex. 2 at 200:25-201:1. Plaintiff and Mrs. Hurlston were wed on October 13, 2007, and it is undisputed that Mrs. Hurlston had an affair with Mr. Barnett while married to Plaintiff and in March of 2011 gave birth to Mr. Barnett's child (Dkt. #95, Ex. 3 at 25:7-9; Dkt. #95 at 12, Ex. 2 at 117:7-13, 117:21-25; Dkt. #107 at 11). In January 2011, Mr. Barnett resigned from his full-time position as Princeton's Chief of Police for reasons unrelated to Plaintiff and/or Mr. Barnett's affair with Plaintiff's wife (Dkt. #95 at 13, Ex. 1 at 29:14-17). Following Mr. Barnett's departure, Mr. Michnick was promoted by Interim Chief of Police James Waters to Patrol Lieutenant *Id.* at 14, Ex. 3 at 28:14-

---

[1] The Court notes that Plaintiff's "version" of the facts stated in his Objections (Dkt. #133) contains some instances of alleged facts raised for the first time by Plaintiff and not included in his previous filings.

29:5, 44:22-45:3.  In May 2011, Mr. Barnett moved to Kyle, Texas and began a full-time position as Kyle's Chief of Police.  *Id.* at 13, Ex. 1 at 29:14-17.

On January 1, 2012, after Mr. Barnett was no longer employed by the Princeton Police Department, Princeton Police Officers Joe Pell and Wayne Clark responded to a domestic disturbance at Plaintiff's residence located in Princeton, Texas.  *Id.* at 15, Ex. 5 at 2-6.  Plaintiff was arrested and was subsequently charged with Assault Family Violence.  *Id.*; *see also* Texas Penal Code § 22.01(b)(2)(B).  Neither Mr. Barnett and/or Mr. Michnick were present; and Plaintiff has asserted no claims against the arresting officers.  On January 22, 2013, Plaintiff pleaded no contest to the lesser included offense of Assault to Cause Bodily Injury.  *Id.* at 18, Ex. 13 at 4-8.[2]

Plaintiff's Third Amended Complaint generally alleges that Mr. Barnett, through his position as Chief of Police in Princeton and/or later in Kyle, influenced Mr. Michnick and other police officers working in Princeton to harass Plaintiff after Mr. Barnett's departure (Dkt. #59 at 6).  Plaintiff contends that this campaign of harassment is the result of the ongoing affair between Mr. Barnett and Mrs. Hurlston.  *Id.* at 3.  Plaintiff further contends that Mr. Barnett's relationship with Mrs. Hurlston was known to various members of the Princeton Police Department, including Mr. Michnick, and that Mr. Barnett instructed Mr. Michnick in the events leading up to and including Plaintiff's arrest.  *Id.* at 4.

Mr. Michnick contends that his only interactions with Plaintiff occurred over a year after Plaintiff's January arrest and several months after the charges brought against Plaintiff for

---

[2] Following Plaintiff's arrest a protective order was entered preventing Plaintiff from contacting Mrs. Hurlston (Dkt. #95 at 16, Ex. 5 at 10, Ex. 6 at 11-12).  On or about January 31, 2012, Mrs. Hurlston complained to the Princeton Police Department that Plaintiff violated the protective order by harassing her via numerous telephone calls and text messages.  *Id.* at 16, Ex. 6 at 1-8.  Plaintiff was subsequently arrested for violation of the protective order.  *See id.* at Ex. 14 at 271-72; Dkt. #107 at 20.  As part of Plaintiff's plea agreement, the charges brought against Plaintiff regarding the alleged violation of the protective order were dismissed (Dkt. #95 at 18, Ex. 13 at 4-8).

assault were fully and finally resolved (Dkt. #95 at 15, Ex. 3 at 56:10-18, 76:10-19, 106:10-107:24).  The first interaction Mr. Michnick had with Plaintiff was on August 2, 2013, when Mr. Michnick, along with two other Princeton police officers, responded to a domestic disturbance call at Plaintiff's residence.  *Id.* at 19-20, Ex. 7 at 2-4.  Plaintiff told the responding officers that he was there to pick up his vehicles and see his daughter, who was in the house.  *Id.* The responding officers were able to diffuse the situation, and no one was arrested or charged with a crime.  *See id.*  Plaintiff was allowed to talk to and play with his daughter.  *Id.*  As to the vehicles, the officers were able to negotiate an arrangement between Plaintiff and Mrs. Hurlston whereby Plaintiff took one of the cars and the Princeton Police Department took the keys to the other for safe-keeping until a court determined who owned it.  *Id.*  No party disputes that Plaintiff voluntarily left the scene and/or that Plaintiff was not arrested or fined.  The second interaction Mr. Michnick had with Plaintiff was on August 7, 2013 – five days later – when Mr. Michnick, along with three other Princeton police officers, responded to another domestic disturbance call at Plaintiff's residence.  *Id.* at 20-21, Ex. 8 at 2-3, Ex. 9 at 3, Ex. 11 at 3].  Plaintiff reported that Mrs. Hurlston was out of town and a man presumed to be Mrs. Hurlston's boyfriend (later identified as Gabriel Brow) locked himself inside the house with several of Mrs. Hurlston's children, including Plaintiff's daughter.  *Id.*  One of the responding police officers whom Plaintiff has not sued states in her affidavit that she went into the house with Plaintiff while he played with his daughter and Plaintiff agreed that it was not in his daughter's best interest for the officers to forcibly remove her from the house (Dkt. #95 at 20-21, Ex. 11 at 3).  Again, no party disputes that the responding officers acted to diffuse the situation, that Plaintiff left voluntarily, and that no one was arrested, fined, or charged with a crime.  *Id.*

On December 27, 2013, Plaintiff filed his Complaint against Mr. Barnett, Mr. Michnick, the City of Princeton, Texas, and the City of Kyle, Texas (Dkt. #1). All claims against the City of Princeton, Texas and the City of Kyle, Texas were fully and finally dismissed by the Court on January 19, 2016 (Dkt. # 132). On May 11, 2015, Defendants Mr. Barnett and Mr. Michnick (hereinafter "Defendants") moved for summary judgment on Plaintiff's claims (Dkt. #95). Plaintiff filed his Response in opposition on June 9, 2015 (Dkt. #107). On June 26, 2015, Defendants filed their Reply, objecting therein to certain evidence Plaintiff relied on in his Response (Dkt. #117). The Magistrate Judge entered a report and recommendation on December 30, 2015, recommending dismissal of each of Plaintiff's remaining claims (Dkt. #129). On January 13, 2016, Plaintiff filed a Motion to Enlarge Time for Response to Report and Recommendations of Magistrate Judge (Dkt. #130), which the Court granted (Dkt. #131); and on January 22, 2016, Plaintiff timely filed objections (Dkt. #133).

Plaintiff asserts two objections herein: (1) the Magistrate Judge failed to consider certain of Plaintiff's properly submitted evidence; and, (2) the Magistrate Judge improperly found the qualified immunity defense timely and/or applicable (Dkt. #133 at 4, 9). On February 2, 2016, Defendants filed a Response to Plaintiff's Objections to Report and Recommendation contending that Plaintiff failed to properly object to any specific finding of the report and recommendation; and, further alleging that, even if Plaintiff had properly objected, he has still failed to demonstrate how the application of the evidence Plaintiff alleges the Magistrate Judge failed to consider would result in an alternative finding and/or how the Magistrate Judge's qualified immunity analysis is flawed (Dkt. #134 at 1-4).

# PLAINTIFF'S OBJECTIONS

*Objection 1 – Consideration of Plaintiff's Summary Judgment Evidence*

Plaintiff's first objection contends that the Magistrate Judge failed to consider certain of Plaintiff's summary judgment evidence which Plaintiff asserts establishes the existence of facts material to his claims (Dkt. #133 at 4). Specifically, Plaintiff alleges that the Magistrate Judge failed to properly consider (1) the affidavit of Gabriel Brow, (2) the deposition testimony of Chad Wilhelm and Mayor Ken Bowers, a letter from Mayor Ken Bowers, and Mr. Barnett's discharge papers, (3) excerpts from Plaintiff's own deposition testimony, and (4) "other significant evidence." *Id.* Plaintiff cites to footnote four[3] on page eight of the Magistrate Judge's report and recommendation in support of his position:

> In their Reply, Defendants object to certain evidence Plaintiff relies on in his Response [Dkt. 117 at 5-8]. Specifically, Defendants object to certain deposition testimony of Plaintiff, the deposition testimony of Chad Wilhelm, and the affidavit of Gabriel Brow as hearsay evidence. *Id.* at 5. Defendants also object to several sections of Plaintiff's Response, arguing that such evidence is not relevant. *Id.* at 7. Defendants' objections are denied as moot because the Court did not rely upon the objected-to-evidence in making its decision on the Summary Judgment Motion.

(Dkt. #129 at 8, n.4). As an initial matter, the footnote referenced by Plaintiff only encompasses three items: (1) certain deposition testimony of Plaintiff, (2) deposition testimony of Chad Wilhelm, and (3) Gabriel Brow's affidavit. *Id.* Plaintiff cites no basis for his belief that the Magistrate Judge failed to consider the other evidentiary items cited in his objections.

Defendants argue, with respect to the footnote, that it does nothing more than recognize that the proffered evidence – certain deposition testimony of Plaintiff, deposition testimony of Chad Wilhelm, and Gabriel Brow's affidavit – has no bearing whatsoever on Plaintiff's claims

---

[3] Plaintiff incorrectly refers to footnote five on page eight of the Magistrate Judge's report and recommendation (Dkt. #133 at 4).

for civil rights violations; and, in any event "even with all reasonable inferences drawn in Plaintiff's favor" such evidence would not result in a different outcome here (Dkt. 134 at 3).

In light of Plaintiff's objection, the Court has undertaken a de novo review of each item of evidence cited by Plaintiff in his objection to the Magistrate Judge's report and recommendation, and following such review has determined that the referenced evidence is either inadmissible and/or insufficient to establish a genuine issue of material fact with respect to the question of whether Defendants violated Plaintiff's constitutional rights. The Court specifically addresses each piece of Plaintiff's evidence below.

### 1.    *Affidavit of Gabriel Brow*

Gabriel Brow ("Mr. Brow") executed an affidavit, which states that during his romantic relationship with Mrs. Hurlston she told him that she − while married to Plaintiff − had an affair with Mr. Barnett (Dkt. #107, Ex. 8 at 1, ¶ 4).  Mr. Brow states that Mrs. Hurlston told him that she conspired with Mr. Barnett to have Plaintiff "charged with a felony and thrown into prison" so that Mrs. Hurlston and Mr. Barnett "would be able to take [Plaintiff's] money." *Id*. at 2, ¶ 5. Mr. Brow also states that Mrs. Hurlston told him that she received a bruise on her right arm when she fell down steps in Paris, France, in December 2012. *Id*. at 2, ¶ 6. As previously noted, Defendants objected to the entirety of Mr. Brow's affidavit as hearsay evidence in their Reply (Dkt. #117 at 5). Plaintiff fails to respond to Defendants' hearsay argument in his objections.

Federal Rule of Civil Procedure 56(c)(4) requires an affidavit to be made on "personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters state." Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). A "statement" includes a persona's written

assertion, if the person intended it as an assertion. FED. R. EVID. 801(a). Unless covered within an exception, hearsay evidence is inadmissible, and cannot be considered by a court at summary judgment. FED. R. EVID. 802; *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997) (finding that the hearsay statements in an affidavit submitted to defeat summary judgment were "incompetent summary judgment evidence" and could not be considered by the court).

The Court finds that Mr. Brow's affidavit − specifically paragraphs four, five, and portions of paragraph six − is hearsay, as it is a written assertion, which Mr. Brow made as an assertion, made by Mrs. Hurlston, offered to prove the truth of the matter asserted (that Mr. Barnett and Mrs. Hurlston (1) had an affair, (2) conspired to have Plaintiff charged with a felony, and (3) that Mrs. Hurlston received a bruise when she fell down steps in Paris, France). There are no exceptions to the hearsay rule that would reasonably apply to the hearsay statements made in Mr. Brow's affidavit (certainly Plaintiff advances none), and the Court finds that paragraphs four, five, and part of paragraph six ("[She] told me that she had received the bruise when she fell down some steps in Paris, France, on her way to her flight to Texas in December, 2012") is inadmissible hearsay and cannot be considered by the Court in its analysis. *See* FED. R. EVID. 803. Defendants' objection to Mr. Brow's affidavit (Dkt. # 117 at 5) should be sustained. The affidavit constitutes incompetent summary judgment evidence and the Court cannot consider Mr. Brow's affidavit.

> ### 2. *Deposition Testimony of Chad Wilhelm and Mayor Ken Bowers, Letter from Mayor Ken Bowers, and Mr. Barnett's Discharge Papers*

Plaintiff further contends the Magistrate Judge failed to consider the deposition testimony of Chad Wilhelm ("Mr. Wilhelm") and Mayor Ken Bowers, the letter from Mayor Ken Bowers, and Mr. Barnett's discharge documents from the City of Princeton Police Department ("Mr. Barnett's discharge documents"). The Court discerns Plaintiff's reliance on this evidence

– the deposition testimony of Mr. Wilhelm and Mayor Ken Bowers, the letter from Mayor Ken Bowers, and Mr. Barnett's discharge documents – is intended to prove Mr. Barnett has a pattern and/or practice of conduct; namely, that Mr. Barnett had romantic affairs with multiple crime victims in Princeton, Texas, one of whom is Mrs. Hurlston (*see* Dkt. #133 at 5). Specifically, Plaintiff contends that this pattern of conduct demonstrates that Mr. Barnett, "wearing a uniform and a badge, used his position of authority for his personal benefit, in particular to advance his relationships with inappropriate, usually married, women." *Id.* Plaintiff further argues that Mr. Barnett's "specific relationship with [Mrs. Hurlston] necessarily intruded on the civil rights of [Plaintiff] as a husband and a father." *Id.*

Again Defendants, in their Reply in Support of Summary Judgment, objected only to parts of Mr. Wilhelm's deposition testimony as hearsay and/or irrelevant (Dkt. # 117 at 5-7);[4] and the Magistrate Judge's footnote clearly refers only to the objected to evidence indicating that the Magistrate Judge fully considered the remaining evidence referenced by Plaintiff (including specifically the deposition testimony of Mayor Ken Bowers, the letter from Mayor Ken Bowers, and Mr. Barnett's discharge papers) (Dkt. #129 at 8, n.4). With respect to Mr. Wilhelm's deposition testimony, Plaintiff has offered no response to Defendants' hearsay and relevancy arguments.

More importantly however, as to each of the items Plaintiff cites (including the deposition testimony of Mayor Ken Bowers, the letter from Mayor Ken Bowers, and Mr. Barnett's discharge papers) Plaintiff fails to address how this evidence changes the result of his constitutional violation claims against Mr. Barnett. The Magistrate Judge found the predominant facts tying Mr. Barnett and Plaintiff together are those that demonstrate Mr. Barnett had an affair

---

[4] Defendants assert no objection to the deposition testimony of Mayor Ken Bowers, the letter from Mayor Ken Bowers, or Mr. Barnett's discharge papers.

with Plaintiff's wife, which most likely resulted in marital strife between Plaintiff and Mrs. Hurlston (Dkt. # 129 at 17). Yet personal matters and/or affairs are not generally sufficient to state a claim under § 1983. *See Frazier v. Bd. Of Trustees of Northwest Miss. Regional Med. Center*, 765 F.2d 1278, 1286 (5th Cir. 1985) (explaining that state action is attributable to private parties "only when the state has some affirmative role ... in the particular conduct underlying a claim of civil rights grievances" and "this requirement is to assure that constitutional standards are invoked only if the state is responsible for the specific conduct of which the plaintiff claims"); *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994) ("[A] police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law.") (citing *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981)). Any interference by Mr. Barnett into Plaintiff's marriage does not constitute state action. The Court agrees with the Magistrate Judge that evidence of Mr. Barnett's inappropriate personal conduct (i.e. the affair) with Mrs. Hurlston (or any other married women for that matter) is troubling; however, under the law it is clear such personal conduct cannot be accorded any weight in the Court's § 1983 analysis (Dkt. #129 at 17). *See Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988) ("Private acts ... are not considered to be done under color of state law merely because the actor is a public official.") (internal quotation marks omitted); *Brown v. Miller*, 631 F.2d 408, 411 (5th Cir. 1980) ("[T]he act of one who is a state officer ... will not be considered as done under color of state law simply because the individual, although pursing private aims, happens to be a state officer."); *Kundratic v. Thomas*, 573 F. App'x 167, (3d Cir. 2014) (finding that a police officer's relationship with the plaintiff's former wife, and more specifically the police officer's destruction of the plaintiff's property and interference with the plaintiff's relationship with his daughter, was not state action). Accordingly, having conducted

an independent review of each of the deposition testimony of Chad Wilhelm and Mayor Ken Bowers, the letter from Mayor Ken Bowers, and Mr. Barnett's discharge documents from the City of Princeton Police Department the Court finds that none of this evidence establishes a genuine issue of material fact with respect to the question of whether Defendants' violated Plaintiff's constitutional rights.

### 3. *Plaintiff's Deposition Testimony and Other Significant Evidence*

Plaintiff's objection also contends that an exchange of emails between Mr. Barnett and Mrs. Hurlston demonstrates Mr. Barnett's involvement in the larger plan to separate Plaintiff from his family and his money, and further demonstrates Mr. Barnett's involvement in destroying evidence that might prove crucial to Plaintiff in defending himself from criminal charges (Dkt. #133 at 6). Notably, Defendants, in their Reply in Support of Summary Judgment, objected only to parts of Plaintiff's deposition testimony as hearsay and/or irrelevant, but Defendants asserted no objection to the emails between Mr. Barnett and Mrs. Hurlston. (Dkt. #117 at 5-7); and the Magistrate Judge fully considered the emails between Mr. Barnett and Mrs. Hurlston (Dkt. #129 at 8, n.4).

Plaintiff again fails to address how this evidence changes the result of his constitutional violation claims against Mr. Barnett. The email exchange between Mr. Barnett and Mrs. Hurlston demonstrates that Mr. Barnett had no knowledge of Plaintiff's arrest for assault of Mrs. Hurlston prior to the event (*see* Dkt. #107, Ex. 4-7 ( "[Mrs. Hurlston:] I figured I'd write this since you got mad the last time I called the cops on [Plaintiff] and didn't tell you. I sent [Plaintiff] to jail last night [because] he went into one of his rages yesterday afternoon...only [sic] only this time he wouldn't stop choking me")).

In another email exchange, Plaintiff alleges it is clear Mr. Barnett is instructing Mrs. Hurlston to destroy evidence. Therein, Mr. Barnett writes:

> You mentioned a phone...does he have it? Does it have anything in it to be concerned about (I.e. phone numbers, pictures, messages, skype info email account info)? Once attorneys get involved, they seek anything negative...so keep that kind of stuff in mind. I would begin to think from a very defensive standpoint.....taking extra precautions. Think from a standpoint of a subpoena to your cell phones, all email accounts, or any other record...then think where they would leave anyone.....to the nest [sic] subpoena. Of course....the same goes for you and your attorney.....getting his stuff.....so it works both ways! Is the attorney that you will use the same one for the child custody? Im [sic] sure he will say either take half of the cash....or keep receipts to show it was used for child care....spousal support....during this time period....not fun and partying as his attorney will likely say.

*Id.* at Ex. 7-1. The Court cannot discern which statements Plaintiff believes were made with the intent to "separate [Plaintiff] from his family and his money" as Plaintiff argues. Moreover and once again, these emails fall short of establishing a genuine issue of material fact with respect to Plaintiff's constitutional violation claims.

Plaintiff also alleges that Mr. Barnett used "his position in law enforcement to obtain a full report on [Plaintiff] from agencies of the federal and state governments, including the FBI, Department of Homeland Security, and the Texas Rangers" (Dkt. #133 at 6; Dkt. #107 at 15-16). However, no proof has been submitted to the Court that Mr. Barnett ordered or obtained these reports. In fact, Plaintiff does nothing more than state "no doubt at [Mr.] Barnett's behest, on May 30, 2012, the Texas Department of Public Safety, Intelligence and Counterterrorism Division, produced a 'Threat to a Peace Office Investigation' report on Glen" (Dkt. #107 at 15-16). Plaintiff's statement is nothing more than conclusory and amounts to nothing more than pure conjecture as there is no evidence linking the reports to Mr. Barnett. The reports do not contain any information as to who requested the reports or why they were requested. Again, Plaintiff presents no evidence suggesting that these reports were generated at Mr. Barnett's

request. The Fifth Circuit has held that a non-movant cannot satisfy his summary judgment burden with "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). Plaintiff's evidence does not establish a genuine issue of material fact with respect to his constitutional violation claims.

Accordingly, each piece of evidence referenced by the Magistrate Judge in footnote four is either inadmissible and/or, if admissible, does not change the ultimate recommendation of the Magistrate Judge. The Magistrate Judge's footnote was narrowly tailored to include only the evidence to which Defendants' expressly objected (Dkt. #129 at 8, n.4) and makes clear the Magistrate Judge believed such evidence did not weight and/or has no bearing on the § 1983 allegations.[5] This Court, having exhaustively considered those three pieces of evidence, finds: (1) Defendants' objection to Mr. Brow's affidavit is sustained, (2) Defendants' objections to Mr. Wilhelm's deposition testimony are overruled, and (3) Defendants' objections to Plaintiff's deposition testimony are overruled. The Court having now analyzed each piece of evidence in the footnote, as well as the deposition testimony of Mayor Ken Bowers, the letter from Mayor Ken Bowers, Mr. Barnett's discharge papers, and the emails between Mr. Barnett and Mrs. Hurlston – as requested by Plaintiff – finds there is no genuine issue of material fact regarding Plaintiff's constitutional violation claims and the result reached by the Magistrate Judge is correct.

---

[5] As made clear by the report and recommendation, the Magistrate Judge fully analyzed the remainder of the summary judgment evidence.

***Objection 2 – Qualified Immunity***

Plaintiff next objects to the Magistrate Judge's findings that (1) Defendants did not waive their entitlement to qualified immunity, and (2) Mr. Michnick acted in an objectively reasonable matter – entitling him to qualified immunity in this case (Dkt. #133 at 9, 12-13). Specifically, Plaintiff asserts that one of the cases cited by the Magistrate Judge in support of non-waiver of the qualified immunity defense is distinguishable from the present case because discovery was closed in the current case when Defendants raised the defense. *Id*. at 9. Plaintiff further contends that the Magistrate Judge erroneously characterized Mr. Michnick's conduct during the August 7, 2013 interaction at Plaintiff's home, and that Mr. Michnick's conduct was clearly objectively unreasonable. *Id*. at 10. Defendants contend (1) Plaintiff's objections fail to demonstrate how he was prejudiced by the delayed assertion of the qualified immunity defense, particularly because he fully briefed the issue in his Response; (2) the Magistrate Judge was correct in the qualified immunity analysis because neither Defendant acted in an objectively unreasonable manner; and (3) in any event Plaintiff has failed to object to the first prong of the qualified immunity analysis (Dkt. #134 at 4)

    *1.*     ***Waiver of Qualified Immunity***

The Magistrate Judge found that Defendants' allegedly untimely disclosure of the qualified immunity defense did not prejudice or harm Plaintiff and, thus, was not waived by Defendants (Dkt. #129 at 15). Generally, the defense of qualified immunity must be raised in the first responsive pleading; however, Fifth Circuit precedent commands that even if a defendant does not timely disclose the qualified immunity defense there is no waiver so long as: (1) sufficient time to respond to the defense remains and (2) there is no evidence of prejudice or harm to the plaintiff. *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 1999). In

fact, courts are instructed to look "at the overall context of the litigation" in order to determine if an affirmative defense such as qualified immunity has been waived. *Id.*

While Plaintiff attempts to distinguish between his case and the *Pasco* case, Plaintiff ignores that ample other cases have reached the same result – finding affirmative defenses are not waived so long as there is no prejudice or harm to the plaintiff. *See e.g., Giles v. Sen. Elec. Co.*, 245 F.3d 474, 492 (5th Cir. 2001) (finding no waiver where a new affirmative defense was raised in a joint pretrial order over a year after complaint was filed); *Lubke v. City of Arlington*, 455 F.3d 489, 499 (5th Cir. 2006) (finding no waiver where a defense was raised in a pretrial motion in limine two years after the complaint was filed and just weeks before trial); *Johnson v. City of Thibodaux*, No. 14-2369, 2016 WL 54828, at *2 (E.D. La. Jan. 4, 2016) (finding no waiver when the qualified immunity defense was raised in the defendants summary judgment motion).

On May 11, 2015, seventeen months after Plaintiff's Complaint, Defendants filed their Motion for Summary Judgment and first raised the qualified immunity defense (*see* Dkt. #95).[6] On May 12, 2015, and June 2, 2015, the Court granted Plaintiff's two Unopposed Motions for Extension of Time to File a Response to Defendants' Motion for Summary Judgment (Dkts. #97; #106). Plaintiff had twenty nine days to file his Response to Defendants' Motion for Summary Judgment (Dkt. #106). Plaintiff fully briefed the issue of qualified immunity in his Response to Defendants' Motion for Summary Judgment, and he has not, in his Response and his Objections, alleged he has been prejudiced or harmed by Defendants untimely disclosure (Dkt. #107 at 20-22), clearly indicating that he has not been prejudiced in his ability to response to the qualified immunity issue. *See Allied Chem. Corp v. Mackay,* 695 F.2d 854, 855-56 (5th Cir. 1983). At no

---

[6] On June 26, 2015, each Defendant also filed an Answer to Amended Complaint and Affirmative Defenses (Dkts. #118; #119) and therein asserted the qualified immunity defense. To date, Plaintiff has not moved to strike and/or otherwise objected to either of Defendants' Answers.

point did Plaintiff request additional time for briefing or other relief, such as additional time for discovery, and no trial setting currently exists in this matter, pursuant to the Court's Order on October 28, 2014 (Dkt. #64). All of this demonstrates that substantial time remained before trial for Plaintiff to fully respond to the qualified immunity defense. *See Pasco*, 566 F.3d at 577. Accordingly, and in keeping with the overwhelming Fifth Circuit precedent, the Court overrules Plaintiff's objection on the issue of waiver of qualified immunity and finds Defendants did not waive their entitlement to qualified immunity by their untimely disclosure.

### 1.      *First Prong of the Qualified Immunity Analysis*

Qualified immunity is a defense available to state officials sued for constitutional violations pursuant to 42 U.S.C. § 1983. The defense shields such government officials from liability in their individual and/or official capacity for civil damages so long as their conduct does not violate clearly established rights and "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994). When the defense of qualified immunity is invoked, the burden is on the plaintiff seeking to defeat qualified immunity to show: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct. *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011). The first prong of the qualified immunity analysis requires the Court to determine "whether the facts, either as the plaintiff alleges or as proved without dispute, establish that the officer violated a clearly established constitutional right." *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004) (citation omitted).

The Magistrate Judge found, on each of Plaintiff's six constitutional violation claims, that Plaintiff failed the first prong of the qualified immunity analysis because he failed to present

evidence demonstrating that Mr. Barnett and Mr. Michnick's conduct violated his constitutional rights (Dkt. #129 at 19-30). As Defendants point out in their Response to Plaintiff's Objections, Plaintiff does not object to the Magistrate Judge's analysis of the first prong of the qualified immunity analysis with respect to either Defendant (Dkt. #134 at 4-5). "At the summary judgment state of litigation, the plaintiff must present sufficient evidence to create a genuine dispute of material fact regarding both prongs of the two-pronged qualified immunity test." *Beaulieu v. Lavigne*, No. 12–31061, 2013 WL 4478228, at *2 (5th Cir. Aug. 22, 2013); *accord Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) ("To discharge this burden, a plaintiff must satisfy a two-prong test.") (internal quotation marks omitted). Accordingly, having reviewed the Magistrate Judge's analysis of the first prong of the qualified immunity analysis, and no objections thereto begin filed, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct with regard to the first prong of the qualified immunity analysis. Fifth Circuit precedent clearly holds that a plaintiff must present evidence regarding both prongs of the qualified immunity analysis in order to survive summary judgment. *Morgan*, 659 F.3d at 371; *Beaulieu*, 2013 WL 4478228, at *2; *Club Retro, LLC*, 568, F.3d at 194. Notwithstanding, the Court also analyzes Plaintiff's objections with respect to the second prong of the analysis.

## 2. *Second Prong of the Qualified Immunity Analysis*

Plaintiff objects to the Magistrate Judge's finding that Mr. Michnick acted in an objectively reasonable manner in his interactions with Plaintiff on August 7, 2013 (Dkt. #133 at 12). Specifically, Plaintiff contends that Mr. Michnick's conduct was objectively unreasonable when Mr. Michnick (1) prevented Plaintiff from retrieving his child; and (2) did "nothing to remove the skinheaded [sic], tattooed stranger from Plaintiff's home." *Id*. Notably, the Court's

objectively reasonable analysis herein focuses only on Mr. Michnick's second interaction with Plaintiff because Plaintiff does not object to: (1) the Magistrate Judge's finding that Mr. Barnett acted in an objectively reasonable manner in his dealings with Plaintiff, or (2) the Magistrate Judge's finding that Mr. Michnick acted in an objectively reasonable manner in his dealings with Plaintiff on August 2, 2013.

The Magistrate Judge found no facts indicating Mr. Michnick was unreasonable in his interactions with Plaintiff when he was twice dispatched to Plaintiff's residence in response to domestic disturbance calls (Dkt. #129 at 18). With respect to the second prong of the qualified immunity analysis, a defendant is entitled to qualified immunity when his conduct is objectively reasonable in light of clearly established law at the time of the conduct at issue. *Anderson*, 483 U.S. at 639; *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1184 (5th Cir. 1990), *overruled on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992)); *Mangieri v. Clifton*, 29 F.3d 1012, 1015 (5th Cir. 1994). This Court must examine whether Defendants' actions were objectively reasonable - that is, whether, in light of the legal rules clearly established at the time, a reasonable official would understand that what he is doing violates the rights at issue. *Pfannstiel*, 918 F.2d at 1178. If reasonable public officials could differ on the lawfulness of Defendants' actions, Defendants are entitled to qualified immunity. *Id*. The issue is an "objective (albeit fact-specific) question whether a reasonable officer could have believed" that he was violating a person's constitutionally protected rights under the circumstances of the complained-of action. *See Anderson*, 483 U.S. at 641. As a general rule, a court should not reserve the objectively reasonable prong of the qualified immunity standard as a fact question for the jury. *Mangieri*, 29 F.3d at 1016. Rather, "in evaluating a claim of qualified immunity, the district court is to make a determination of the objective reasonableness as a matter of law." *Id*.

The facts surrounding Mr. Michnick's conduct on the August 7, 2013 interaction with Plaintiff are reiterated as follows: Mr. Michnick, along with three other Princeton police officers, responded to a domestic disturbance call at Plaintiff's residence (Dkt. #95 at 20-21, Ex. 8 at 2-3, Ex. 9 at 3, Ex. 11 at 3). Plaintiff reported that Mrs. Hurlston was out of town and a man presumed to be Mrs. Hurlston's boyfriend locked himself inside the house with several of Mrs. Hurlston's children, including Plaintiff's daughter. *Id.* One of the responding police officers whom Plaintiff has not sued, Yesenia DeLeon, states in her affidavit that she went into the house with Plaintiff while he played with his daughter and Plaintiff agreed that it was not in his daughter's best interest for the officers to forcibly remove her from the house (Dkt. #95 at 20-21, Ex. 11 at 3). Ultimately, the responding officers were able to diffuse the situation, and no one was arrested or charged with a crime. *Id.*

The Magistrate Judge stated that "during both the first and second August interactions, Mr. Michnick and the other responding Princeton police officers were able to peacefully negotiate an agreement ... thereby keeping the peace" (Dkt. #129 at 18). In his objections, Plaintiff quibbles over the use of the term "agreement" by the Magistrate Judge and argues that no peaceful resolution/agreement was obtained, but rather that Mr. Michnick – who was not dispatched to Plaintiff's residence but voluntarily responded – allegedly prevented Plaintiff from retrieving his child during this interaction, and did "nothing to remove the skinheaded [sic], tattooed stranger from Plaintiff's home." (Dkt. #133 at 12). Even if the Court were to take Plaintiff's deposition testimony regarding the August 7, 2013 interaction as the "true" version of events (which it does herein) – there is still no evidence suggesting Mr. Michnick acted in an objectively unreasonable manner. Plaintiff did not have a court order to remove his daughter from the residence (which Plaintiff admits – *see* Dkt. #133 at 10), Mrs. Hurlston was allowing

Mr. Brow to stay at the residence and watch the children, Plaintiff was allowed to see his daughter in the home and to interact with her, Plaintiff was not arrested, and he ultimately voluntarily left the premises (Dkt. #107, Ex. 6 at 72-78). Mr. Michnick and three other Princeton police officers were able to keep the peace and diffuse a volatile situation in response to a domestic disturbance at Plaintiff's home, and while Plaintiff contends that the officers should have allowed him to take his daughter, he does not present this Court with any evidence – such as a child custody order or divorce agreement – allowing the officers to do such a thing.

Again, an official's conduct is objectively reasonable unless all reasonable officials in that defendant's circumstances would have known that the conduct violated the Constitution. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 343 (1986). Plaintiff cannot and has not met his burden to show that Mr. Michnick is not entitled to qualified immunity. The Court finds that Mr. Michnick's conduct was objectively reasonable in light of clearly established law and for this additional reason Mr. Michnick is entitled to qualified immunity. Accordingly, Plaintiff's second objection is overruled.

## CONCLUSION

Having received the report of the United States Magistrate Judge (Dkt. #129), having considered each of Plaintiff's timely filed objections (Dkt. #133), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. #129) as the findings and conclusions of the Court.

It is, therefore, **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. #95) is **GRANTED**, and Plaintiff's claims against Defendants Jeffery Barnett and Robert Michnick are **DISMISSED**.

**IT IS SO ORDERED.**

**SIGNED this 1st day of March, 2016.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE